

CJ-2022-4216

Andrews

**IN THE DISTRICT COURT OF OKLAHOMA COUNTY**
**STATE OF OKLAHOMA**

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

AUG 29 2022

RICK WARREN
COURT CLERK
127 _____

| | |
|---|---|
| MCLANE COMPANY, INC.<br><br>    Plaintiff,<br><br>v.<br><br>CERTAIN UNDERWRITERS AT<br>LLOYD'S, LONDON (PEMBROKE 4000)<br><br>    Defendant. | Case No.: CJ-2022-4216<br><br>Judge: _____<br><br>*Jury Trial Demanded* |

## PETITION

Plaintiff McLane Company, Inc. states and alleges as follows for its claims against Defendant:

1. Plaintiff McLane Company, Inc. ("McLane") is a Texas corporation with its principal place of business in Bell County, Texas. McLane is authorized to do business in the State of Oklahoma and conducts regular business in Oklahoma County, Oklahoma.

2. Defendant Certain Underwriters at Lloyd's, London (Pembroke 4000) ("Pembroke") is an unincorporated entity that maintains its principal place of business in London, England. Pembroke is managed by Pembroke Managing Agency Ltd., a private limited company incorporated in England and Wales with its principal place of business in London, England.

3. The contracts at issue in this dispute provide that Pembroke, at McLane's request, "will submit to the jurisdiction of a Court of competent jurisdiction within the United States."

Exhibit 1

4.      This court also may exercise jurisdiction over Pembroke pursuant to 12 Okl. St. § 2004(F), as on information and belief Pembroke conducts regular business in Oklahoma County, Oklahoma through Midlands Management Corporation ("MMC") and Midlands Claim Administrators, Inc. ("MCA") and other agents, and Pembroke's communications and contacts with MMC and MCA in Oklahoma County are directly related to McLane's cause of action.

5.      This Court has jurisdiction over the parties and subject matter herein.

## FACTUAL BACKGROUND

**A.      The Insurance Policy**

6.      Pembroke issued to McLane through MMC in Oklahoma City, Oklahoma an Occupational Accident Insurance Policy, bearing policy No. PEM10107-01 for the Policy Period of February 23, 2018 to February 23, 2019 (the "Policy").

7.      MMC is an Oklahoma corporation with its principal place of business in Oklahoma County, Oklahoma.

8.      On information and belief, at all times relevant to this action, MMC operated out of its principal place of business in Oklahoma County, Oklahoma.

9.      The Policy identifies MMC as the "Authorized Surplus Lines Agent."

10.     The Policy states, "[a]ny notification or correspondence required or requested in this Policy which is to be sent to the Company should be sent to the Authorized Surplus Lines Agent."

11.     The cover page of the Policy states, "[t]his Certificate is issued in accordance with the limited authorization granted to the Correspondent by [Pembroke]" and states all inquiries regarding the Policy should be addressed to the Correspondent, which is identified as MMC. The cover page lists MMC's address in Oklahoma City, Oklahoma.

12. The Policy's Declarations page includes a signature by a representative of MMC, which is dated March 14, 2018.

13. The Policy identifies MCA as the "Claims Administrator."

14. MCA is an Oklahoma Corporation with its principal place of business in Oklahoma County, Oklahoma.

15. On information and belief, at all times relevant to this action, MCA operated out of its principal place of business in Oklahoma County, Oklahoma.

16. The Policy states that Pembroke has appointed MCA "to handle any claim made by [McLane], or suit brought or other proceedings instituted against [McLane] to which this insurance applies."

17. The Policy includes a "Jurisdiction" provision, which states that, "[t]his Certificate is subject to the laws of the state where the policy was issued."

18. The Policy provides limits of coverage of $5,000,000 per Covered Person subject to a $1,000,000 Self-Insured Retention.

19. The Policy provides coverage for an Accident or a series of Accidents resulting in Bodily Injury to a Covered Person that arises out of the Covered Person's Scope of Employment and occurs while the Policy is in force.

20. The Policy states that Pembroke will reimburse McLane for covered amounts actually paid by McLane arising from a Covered Occurrence.

21. The Policy states that Pembroke will reimburse McLane for the amount in excess of the Self-Insured Retention subject to the Policy's limits of coverage.

**Exhibit 1**

### B. The First Underlying Incident

22. While the Policy was in force, an Accident occurred in which E.S. (a McLane employee at the time and a Covered Person under the Policy) sustained Bodily Injury arising out of the Scope of his Employment, which constituted a Covered Occurrence under the Policy.

23. McLane gave timely notice of the accident to MCA and Pembroke.

24. McLane contracted with Paradigm Management Services LLC ("Paradigm") for the overall management of E.S.'s medical care and treatment, including payment of medical bills, clinician oversight, nurse case management and medical care quality control.

25. McLane paid Paradigm substantial consideration in exchange for its services under the contract.

26. E.S. and certain of his family members (the "E.S. Plaintiffs") later initiated an arbitration against McLane related to the accident.

### C. Pembroke's Bad Faith Claims Handling

27. MCA – which Pembroke appointed to handle claims under the Policy – assigned file number 223078 with respect to McLane's claim related to the accident and the arbitration (the "E.S. Claim").

28. On November 2, 2020, MCA sent a reservation of rights letter to McLane advising that, "questions exist as to whether there would be coverage for all expenses claimed in connection with [E.S.'s] injuries."

29. The letter vaguely asserted that, "there is a question regarding the extent to which the benefits paid by McLane on behalf of [E.S.] erode McLane's self-insured retention" and "Underwriters reserve the right to deny coverage because such benefits do not erode the [Self-Insured Retention]." The letter did not connect these statements to McLane's payments to

Paradigm, or assert a specific reservation of rights or coverage defense related to McLane's payments to Paradigm.

30. The letter did not identify what benefits paid by McLane on behalf of E.S. were subject to these statements, or specifically how the reservation of rights applied to the E.S. Claim.

31. The letter also vaguely asserted that "[t]here is a question as to whether some of the payments made by McLane on behalf of [E.S.] fall within Exclusion 4 (voluntary payments)." The description of Exclusion 4 as concerning "voluntary payments" was misleading and inexplicable given that endorsement No. 3 to the Policy removed the phrase "voluntary payment" from the exclusion, which no longer made any reference to a "voluntary payment."

32. The letter did not identify what benefits paid by McLane on behalf of E.S. were subject to these statements, or specifically how the statements applied to the E.S. Claim.

33. On April 5, 2021, MCA sent a supplemental reservation of rights letter to McLane. MCA's letter made no reference to the vague issues raised in its November 2020 letter.

34. On August 23, 2021, McLane responded in writing to MCA's two reservation of right letters. As to the issues raised in the November 2020 letter, McLane stated:

> We disagree that amounts incurred by McLane with respect to this Claim do not exhaust the Policy's Self-Insured Retention and that Exclusion 4 applies to bar coverage. McLane is otherwise unable to evaluate and meaningfully respond to these reservations of right. To the extent Underwriters continue to reserve their right to deny coverage on these grounds, please promptly clarify and provide more information concerning the bases for your arguments regarding exhaustion of the Self-Insured Retention and potential application of Exclusion 4 under the Policy.

35. McLane's letter also requested that MCA and Pembroke acknowledge exhaustion of the Policy's Self-Insured Retention.

36. On October 28, 2021, counsel retained by MCA and Pembroke responded to McLane's letter by stating that they declined to withdraw their reservation of rights on the vague issues raised in their November 2020 letter.

Exhibit 1

37. Rather than clarify the application of these reservations of right regarding the E.S. Claim – as requested by McLane – counsel's letter quoted at length numerous provisions in the Policy (including the definition of "Self-Insured Retention" and Exclusion 4) and reasserted the vague reservations of right from their prior letter, without any reference to the payment to Paradigm or why those costs may not be covered under the Policy.

38. MCA and Pembroke's October 2021 letter failed to acknowledge McLane's exhaustion of the Self-Insured Retention.

39. On December 10, 2021, McLane responded in writing to MCA and Pembroke's letter by explaining that the Self-Insured Retention essentially had been exhausted by McLane's payments to Paradigm. McLane's letter also explained why Exclusion 4 did not apply to McLane's claim.

40. MCA and Pembroke never responded to these positions and arguments raised by McLane in its letter.

### D. MCA And Pembroke Never Responded to McLane's Coverage Arguments Or Denied Coverage for The Payments to Paradigm

41. In February 2022, with the agreement and consent of Pembroke, McLane reached a settlement in principle with the E.S. Plaintiffs, which was finalized the following month.

42. Overall, McLane incurred and actually paid covered amounts under the Policy with respect to the Underlying Incident and the arbitration far in excess of the Self-Insured Retention.

43. Although Pembroke reimbursed McLane for some amounts paid in excess of the Self-Insured Retention, Pembroke failed to either (i) acknowledge that amounts paid by McLane to Paradigm for the overall management of E.S.'s medical care and treatment had impaired and exhausted the Self-Insured Retention, or (ii) reimburse McLane for such payments.

Exhibit 1

44. MCA and Pembroke have never explained how or why they believe amounts paid by McLane did not exhaust the Self-Insured Retention, or how or why they believed Exclusion 4 applied to the amounts paid to Paradigm.

45. MCA and Pembroke have never even bothered to deny coverage for the amounts paid by McLane to Paradigm.

46. MCA and Pembroke have stopped communicating with McLane regarding the additional amounts owed under the Policy.

E. **The Renewal Policy And The Second Underlying Incident**

47. Pembroke issued to McLane through MMC in Oklahoma County, Oklahoma another Occupational Accident Insurance Policy, bearing policy No. PEM10107-02 for the Policy Period of February 23, 2019 to February 23, 2020 (the "Renewal Policy") (together with the Policy, the "Policies").

48. The Renewal Policy contains the same essential terms and provisions alleged above with respect to the Policy.

49. The Renewal Policy's Declarations page includes a signature by a representative of MCC, which is dated February 12, 2019.

50. While the Renewal Policy was in force, an accident occurred in which B.A.[1] (a McLane employee at the time and a Covered Person under the Policy) sustained Bodily Injury arising out of the Scope of his Employment, which constituted a Covered Occurrence under the Renewal Policy.

51. McLane gave timely notice of the accident under the Renewal Policy.

---

[1] McLane identifies the claimants E.S. and B.A. by their initials only to protect their confidentiality and the disclosure of protected information. To the extent required, McLane's pleading can be updated with both individuals' full names after entry in this action of an appropriate confidentiality order or other order by the Court.

52. McLane contracted with Paradigm for the overall management of B.A.'s medical care and treatment, including payment of medical bills, clinician oversight, nurse case management and medical care quality control.

53. McLane paid Paradigm substantial consideration in exchange for its services under the contract.

54. B.A. and certain of his family members (the "B.A. Plaintiffs") later initiated an arbitration against McLane related to the accident.

**F.   Pembroke's Bad Faith Claims Handling**

55. MCA and Pembroke assigned file number 224108 with respect to McLane's claim under the Renewal Policy related to the accident and the arbitration (the "B.A. Claim").

56. On April 25, 2022, MCA – which Pembroke appointed to handle claims under the Renewal Policy – sent a reservation of rights letter to McLane concerning the B.A. Claim stating that "there are coverage questions that exist with respect to the allegations and damages sought by the plaintiffs."

57. Although the letter referenced McLane's payment to Paradigm, it did not assert a reservation of rights or coverage defense regarding McLane's payment. Instead, just like its November 2020 letter to McLane concerning the E.S. Claim, the letter vaguely asserted in boilerplate fashion that "there is a question regarding the extent to which the benefits paid by McLane on behalf of [B.A.] erode McLane's self-insured retention" and "Underwriters reserve the right to deny coverage "because such benefits do not erode the SIR."

58. Just like Defendants' November 2020 letter concerning the E.S. Claim, MCA's April 2022 letter concerning the B.A. Claim also vaguely asserted in boilerplate fashion that "[t]here is a question as to whether some of the payments made by McLane on behalf of [B.A.] fall within Exclusion 4 (voluntary payments)."

59. MCA's reservation of rights for the B.A. Claim thus was nearly identical to its reservation of rights for the E.S. Claim, including with respect to its misrepresentation of Exclusion 4 as a "voluntary payments" exclusion.

60. MCA and Pembroke have never explained how or why they believed amounts paid by McLane for the B.A. Claim did not exhaust the Self-Insured Retention of the Renewal Policy, or how or why they believed Exclusion 4 applied to the amounts paid to Paradigm.

61. McLane has incurred and actually paid covered amounts in excess of the Self-Insured Retention of the Renewal Policy.

62. To date, however, Pembroke has failed to either (i) acknowledge that amounts paid by McLane to Paradigm for the overall management of B.A.'s medical care and treatment had impaired and exhausted the Self-Insured Retention, or (ii) reimburse McLane for such payments.

63. By failing to provide coverage to McLane for the payments to Paradigm in connection with the E.S. Claim and B.A. Claim, respectively, Pembroke has violated its obligations under the Policies.

64. McLane's damages and the amount in controversy exceed $75,000.

65. All conditions and requirements of the Policy and Renewal Policy, including but not limited to payment of premiums and timely written notice, have been satisfied by McLane or otherwise waived by Pembroke.

### FIRST CAUSE OF ACTION
### (Declaratory Judgment – Okla. Stat. tit. 12 § 1651)

66. Paragraphs numbered 1-65 of this Petition are incorporated by reference herein.

67. McLane asserts that its payments to Paradigm for the management of the medical care and treatment of E.S. and B.A., respectively, are covered under the Policies.

Exhibit 1

68.     Pembroke – by its self and through its agents – has failed to (i) acknowledge that the amounts paid by McLane to Paradigm impair or exhaust the Self-Insured Retention, or (ii) provide reimbursement for amounts paid by McLane to Paradigm.

69.     A justiciable controversy thus exists between McLane, on the one hand, and Pembroke, on the other hand, concerning Pembroke's obligation under the Policies to provide coverage for McLane's payments to Paradigm for the medical care and treatment of E.S., B.A., and all other similarly situated claimants.

**WHEREFORE**, McLane prays this Court grant it relief in the form of a declaration that McLane's full payments to Paradigm for the medical care and treatment of E.S. are covered under the Policy; that McLane's full payments to Paradigm for the medical care and treatment of B.A. are covered under the Renewal Policy; and that McLane's full payments to Paradigm for the medical care and treatment of all other similarly situated claimants are covered under the Policies and/or all other Occupational Accident Insurance Policies issued by Pembroke and/or MCC to McLane with substantially the same coverage terms and provisions as the Policies.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

70.     Paragraphs numbered 1-69 of this Petition are incorporated by reference herein.

71.     McLane entered into contracts with Pembroke for insurance policies providing coverage for, among other costs and expenses, McLane's payments to Paradigm for the medical care and treatment of its employees.

72.     McLane paid consideration to Pembroke and/or its agents under the said contracts/policies.

**Exhibit 1**

73.     The Policies provide coverage for McLane's payments to Paradigm for the medical care and treatment of McLane's employees.

74.     In its handling of the E.S. Claim and B.A. Claim, Pembroke – by its self and through its agents – breached its contractual obligations by failing to pay insurance proceeds owed to McLane under the Policies concerning McLane's payments to Paradigm for the medical care and treatment of E.S. and B.A.

**WHEREFORE**, McLane prays this Court grant it relief in the form of judgment in its favor against Pembroke including, but not limited to, actual and compensatory damages in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs and interest, together with awarding of lawful costs, interest, attorneys' fees, and other relief this Court deems just and proper.

### THIRD CAUSE OF ACTION
### (In the Alternative - Unjust Enrichment)

75.     Paragraphs numbered 1-69 of this Petition are incorporated by reference herein.

76.     Pembroke has benefitted significantly from McLane's payments to Paradigm for the medical care and treatment of E.S. and B.A.

77.     McLane's payments to Paradigm for the medical care and treatment of E.S. and B.A. reduced the benefits owed to E.S. and B.A. and Pembroke's liability in connection with their legal claims.

78.     Despite these significant financial benefits, Pembroke has provided no coverage and made no restitution to McLane for its payments to Paradigm.

79.     Defendants thus have money in their hands that in equity and good conscience they should not be allowed to retain.

Exhibit 1

**WHEREFORE**, in the event McLane has no adequate remedy at law against Pembroke, McLane prays this Court grant it relief in the form of judgment in its favor against Pembroke including, but not limited to, restitution of all amounts inequitably retained by them, in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs and interest.

### FOURTH CAUSE OF ACTION
### (Bad Faith)

80. Paragraphs numbered 1-79 of this Petition are incorporated by reference herein.

81. The E.S. Claim and B.A. Claim are covered claims under the Policy and Renewal Policy, respectively.

82. Pembroke – by its self and through its agents – was required to take reasonable actions in handling these claims, including reasonable actions in its investigation and evaluation of coverage for McLane's payments to Paradigm for the medical care and treatment of E.S. and B.A., and in its communications with McLane regarding its investigation and evaluation of coverage.

83. The actions of Pembroke – by its self and through its agents – were unreasonable under the circumstances, and Pembroke – by its self and through its agents – recklessly disregarded its duty to deal fairly and act in good faith toward McLane in its handling of the E.S. and B.A. Claims, including, but not limited to, by engaging in the following acts or omissions:

   a. Failing to properly investigate coverage for McLane's payments to Paradigm, including by failing to investigate the actual services provided by Paradigm;

   b. Failing to clearly communicate reservations of right and coverage defenses;

   c. Failing to provide any coverage position at all – much less a clear coverage position – concerning the payments to Paradigm;

   d. Failing to affirm or deny coverage for the payments to Paradigm;

**Exhibit 1**

e.  Misconstruing and misrepresenting provisions of the Policies; and

f.  Failing to give McLane's interests faithful consideration;

all in violation of the covenant of good faith and fair dealing and resulting in a financial benefit to Pembroke.

84. The breach or violation of the duty of good faith and fair dealing by Pembroke was the direct cause of the damages sustained by McLane, which exceed $75,000.00.

**WHEREFORE**, McLane prays this Court grant it relief in the form of judgment in its favor against Pembroke including, but not limited to, actual and punitive damages in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs and interest, together with awarding of lawful costs, interest, attorneys' fees, punitive damages, and other relief this Court deems just and proper.

JURY TRIAL DEMAND

Respectfully submitted,

*[signature]*

Seth A. Day, OBA No. 20670
**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**
100 N. Broadway, Suite, 2900
Oklahoma City, Oklahoma 73102
Telephone: (405) 553-2828
Facsimile: (405) 553-2855
sday@hallestill.com

*and*

Noel C. Paul (pro hac vice application to be submitted)
Eric M. Toepfer (pro hac vice application to be submitted)
**REED SMITH LLP**
10 S. Wacker Drive
40th Floor
Chicago, IL 60606
Telephone: (312) 207-2403
Facsimile: (312) 207-6400
*Attorneys for Plaintiff*

2659865.1:010955.00001

**Exhibit 1**